ORAL ARGUMENT NOT YET SCHEDULED

CASE NOS. 23-1171, 23-1188

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

STARBUCKS CORPORATION, D/B/A STARBUCKS COFFEE COMPANY
Petitioner/Cross-Respondent,

vs.

NATIONAL LABOR RELATIONS BOARD,
Respondent/Cross-Petitioner

---

ON PETITION FOR REVIEW
FROM ORDER OF THE NATIONAL LABOR RELATIONS BOARD
372 NLRB No. 93 (June 20, 2023)

---

**INITIAL BRIEF OF PETITIONER
(DEFERRED APPENDIX)**

---

Maurice Baskin
Littler Mendelson, PC
815 Connecticut Ave, N.W., Ste. 400
Washington, D.C. 20006
T: (202) 842-3400
F: (202) 842-0011
mbaskin@littler.com

*Attorney for Starbucks Corporation,
d/b/a Starbucks Coffee Company*

## RULE 26.1 CORPORATE DISCLOSURE STATEMENT

Petitioner and Cross-Respondent Starbucks Corporation ("Starbucks") is a Washington state corporation that operates over 9,000 retail locations across the United States. Starbucks has no parent corporation, no publicly held corporation owns more than 10% of Starbucks' stock, and no publicly held company has a 10% or greater ownership interest in Starbucks.

*/s/ Maurice Baskin*
Maurice Baskin

## PETITIONER'S AND CROSS-RESPONDENT'S CERTIFICATE OF PARTIES, RULINGS, AND RELATED CASES

### A. Parties

1. Starbucks Corporation ("Starbucks") is the Petitioner and Cross-Respondent.

2. The National Labor Relations Board ("Board" or "NLRB") is the Respondent and Cross-Applicant for Enforcement.

3. Workers United, Labor Union International, affiliated with Service Employees International Union ("Union") was the charging party in the underlying proceedings before Region 19 and is currently the Movant-Intervenor.

ii

**B. Rulings under Review**

Starbucks seeks review of a Decision and Order of the National Labor Relations Board issued against Starbucks on June 20, 2023, reported at 372 NLRB No. 93, captioned *Starbucks Corporation and Workers United affiliated with Service Employees International Union*.

**C. Related Cases**

Starbucks is aware of no related cases before this or any other court.

*/s/ Maurice Baskin*
Maurice Baskin

# TABLE OF CONTENTS

PAGE

I.  JURISDICTION ........................................................................................1

II.  ISSUES PRESENTED ...............................................................................1

III.  RELEVANT STATUTES AND REGULATIONS ......................................2

IV.  STATEMENT OF THE CASE AND FACTS ..............................................3

    A.  Background ........................................................................................3

    B.  A Brief Introduction to Starbucks' Policies .........................................3

    C.  Starbucks' Gift and Solicitation/Distribution Policies........................4

    D.  Starbucks Partner Rachel Ybarra is reminded about Starbucks'
        Gift and Solicitation/Distribution Policies after the Store
        Manager witnesses Ybarra failing to comply with both policies........6

    E.  The Union files two Unfair Labor Practice charges in January
        2022 .................................................................................................10

V.  SUMMARY OF ARGUMENT....................................................................13

VI.  STANDING ..............................................................................................17

VII.  STANDARD OF REVIEW ......................................................................17

VIII.  ARGUMENT ...........................................................................................19

    A.  Board precedent confirms objectively verifiable evidence is
        necessary to establish a Section 8(a)(1) violation ..............................19

    B.  The Board improperly failed to apply governing precedent
        confirming retail employers may enforce no solicitation policies
        at all times in customer service and sales areas even when
        employees are on break. ....................................................................21

C.    The Board relied on provably incorrect facts, concluding
      Starbucks violated Section 8(a)(1) by enforcing its Gifts and
      Solicitation policies in non-working time in non-work areas, but
      the facts confirmed the policy violations occurred in a customer
      service/sale area, and nothing was ever said to specifically
      target Union buttons or pins ...............................................................26

D.    It cannot be unlawful for an employer to counsel or instruct an
      employee to comply with a lawful policy and the objectively
      verifiable facts along with all reasonable inferences confirm no
      Section 8(a)(1) violation occurred.......................................................28

E.    The Board's Order Is Overbroad........................................................33

IX.   CONCLUSION..............................................................................................34

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ABM Onsite-Servs.-West, Inc. v. NLRB,*
   849 F.3d 1137 (D.C. Cir. 2017)........................................................18

*Adtranz ABB Daimler-Benz Transportation, N. A., Inc. v. NLRB,*
   253 F.3d 19 (D.C. Cir. 2001)............................................................31

*Advanced Life Sys. Inc. v. NLRB,*
   898 F.3d 38 (D.C. Cir. 2018)......................................................19, 30

*Allentown Mack Sales & Serv. v. NLRB,*
   522 U.S. 359 (1998)..........................................................................19

*Bankers Club, Inc.,*
   218 NLRB 22 (1975) ............................................14, 23, 24, 25

*Ben Franklin Division,*
   251 NLRB 1512 (1980) ....................................................................21

*Beth Israel Hosp. v. NLRB,*
   437 U.S. 483 (1978)..........................................................13, 21, 24

*Cellco Partnership v. NLRB,*
   892 F.3d 1256 (D.C. Cir. 2018)........................................................19

*Circus Circus Casinos, Inc. v. NLRB,*
   961 F.3d 469 (D.C. Cir. 2020)....................................................17, 18

*Cooper Tire Rubber Co. v. NLRB,*
   957 F.2d 1245 (5th Cir. 1992) ..........................................................22

*Country Skillet Poultry Co.,*
   271 NLRB 847 (1984) ......................................................................20

*Detroit Paneling Systems, Inc.,*
   330 NLRB 1170 (2000) ....................................................................29

*Eastex, Inc. v. NLRB,*
   437 U.S. 556 (1978)..........................................................................22

*In Re Equip. Trucking Co., Inc.*,
    336 NLRB 277 (2001) ....................................................................21

*Everport Terminal Servs. v. NLRB*,
    47 F.4th 782 (D.C. Cir. 2022)...............................................18, 19

*FDRLST Media, LLC v. NLRB*,
    35 F.4th 108 (3rd Cir. 2022) ................................................20, 31

*Fluor Daniel, Inc.*,
    304 NLRB 970 (1991) ....................................................................29

*Frank Mashuda Co., Inc.*,
    221 NLRB 233 (1975) ....................................................................20

*Fred Meyer Stores, Inc. v. NLRB*,
    865 F.3d 630 (D.C. Cir. 2017)......................................................19

*Hawaiian Dredging Constr. Co. Inc. v. NLRB*,
    857 F.3d 877 (D.C. Cir. 2017)......................................................17

*Lemoyne-Owen College v. NLRB*,
    357 F.3d 55 (D.C. Cir. 2004) ................................................18, 25

*Marriott Corp.*,
    223 NLRB 978 (1976) ......................................................13, 23, 24

*Marshall Field & Co.*,
    98 NLRB 88 (1952), *enforced*, 200 F.2d 375 (7th Cir. 1953)......................14, 23

*McDonald's Corp.*,
    205 NLRB 404 (1973) ..............................................13, 22, 23, 24

*Mediplex of Danbury*,
    314 NLRB 470 (1994) ......................................................19, 20, 30

*Miller Electric Pump & Plumbing*,
    334 NLRB 824 (2001) ..............................................................19, 30

*National Dance Institute – New Mexico, Inc.*,
    346 NLRB No. 35 (2016) ..............................................................20

*Omni Spectra, Inc.*,
　186 NLRB 673 (1970) ...............................................................31, 32

*Our Way*, *Inc.*,
　268 NLRB 394 (1983) ...........................................................................31

*Peyton Packing Co.*,
　49 NLRB 828 (1943) .............................................................................31

*Phoenix Glove Co.*,
　268 NLRB 680 (1984) ...........................................................................21

*Retail Clerks Local 1059 v. NLRB*,
　348 F. 2d 369 (D.C. Cir. 1965) ...........................................................17

*Rossmore House*,
　269 NLRB 1176 (1984) ...............................................................19, 20, 30

*Sam's Club*,
　349 NLRB 1007 (2007) ................................................................14, 25

*Tayko Industries*,
　214 NLRB 84 (1974) .............................................................................21

*The New Otani Hotel & Garden*,
　325 NLRB 928 (1998) ...........................................................................29

*Tramont Mfg., LLC v. NLRB*,
　890 F.3d 1114 (D.C. Cir. 2018) ..........................................................18

*USAA v. NLRB*,
　387 F.3d 908 (D.C. Cir. 2004) ............................................................22

*Valmont Industries, Inc. v. NLRB*,
　244 F.3d 454 (5th Cir. 2001) ...............................................................22

*Windsor Redding Care Ctr., LLC v. NLRB*,
　944 F.3d 294 (D.C. Cir. 2019) ............................................................19

**Statutes**

29 U.S.C. § 158(a)(1) ...............................................................................19

29 U.S.C. § 160 (e)(f) .................................................................................1

29 U.S.C. § 160(f) ..................................................................................................17

**Other Authorities**

29 C.F.R. § 785.18 .................................................................................................8

FRAP 28(a)(5) .......................................................................................................2

# GLOSSARY

ALJ:          Administrative Law Judge John T. Giannopoulos

ALJD:         ALJ's Decision

APA:          Administrative Procedure Act

JA:           Deferred Joint Appendix

NLRA or Act:      National Labor Relations Act

NLRB or Board:    National Labor Relations Board

Union:            Workers United affiliated with SEIU

Petitioner or Starbucks:    Starbucks Corporation

General Counsel: The General Counsel for the NLRB

Tr:     Transcript of ALJ Hearing

R. Exh.:      Respondent Starbucks' Exhibit

ALJ Exh.:     ALJ's Exhibit

GC Exh.:      General Counsel's Exhibit

# I.    JURISDICTION

The Court has jurisdiction under Section 10(e)(f) of the National Labor Relations Act ("NLRA" or the "Act"), 29 U.S.C. § 160 (e)(f). This is a petition for review from the Board's Decision and Order in Case 19-CA-289275 and 19-CA-289771, reported at 372 NLRB No. 93 (June 20, 2023), and a cross-application for enforcement by the Board. The Board issued its Decision on June 20, 2023. The Board's Decision is final with respect to all parties. Starbucks timely filed its Petition for Review on June 30, 2023 (D.C. Cir. No. 23-1171). The Board filed a cross-application for enforcement of its order on July 18, 2023 (D.C. Cir. No. 23-1188). The Union filed a motion to intervene on July 18, 2023 which remains pending. The Court consolidated both proceedings on July 18, 2023.

# II.    ISSUES PRESENTED

1.    Whether the Court should enforce the Board's Decision concluding Starbucks violated the NLRA by prohibiting solicitation/distribution by employees on break-time, when long-standing Board precedent holds employers may enforce no solicitation/distribution policies in customer sales and service areas even during break-time, and the undisputed facts confirm all activity occurred in the customer sales and service area.

2.    Whether the Court should enforce the Board's decision principally based on a factual finding that Starbucks counseled an employee against distributing

1

Union pins during non-work time in non-work areas when (1) the incidents in question occurred in the customer service/sales area, and not in non-work areas, (2) the Store Manager's comments were specific to distributing pins to customers, and (3) the Store Manager was simply enforcing a facially neutral policy that applied to all solicitations and never targeted <u>union</u> buttons or pins (union buttons or pins were never specifically mentioned).

      3.    Whether it is an unlawful violation of Section 8(a)(1) for an employer to communicate a lawful policy to an employee where, as here, the Board has never alleged the policy is unlawful.

      4.    Whether the Court should enforce the Board's decision when the Complaint alleged Starbucks violated Section 8(a)(1) by counseling or instructing an employee to not give union pins to customers, but it is undisputed the Store Manager never said anything about union pins and never used that term, and the issue regarding solicitation during break-time was never alleged (and is ultimately unsupported by the language used by the store manager, and the context of the discussion).

## III.    RELEVANT STATUTES AND REGULATIONS

Pertinent sections of the NLRA, the APA, and the Code of Federal Regulations appear in a Statutory Addendum attached to the end of this brief, consistent with Circuit Rule 28(a)(5).

2

## IV.   STATEMENT OF THE CASE AND FACTS

This consolidated proceeding addresses enforcement of the Board's Decision addressing two unfair labor practice charges that were consolidated for hearing. The Complaint alleged Starbucks unlawfully enforced its Jury and Witness Duty Policy by interfering with rights to comply with a Board subpoena to testify at a representation hearing and unlawfully enforced its Gift and Solicitation/Distribution Policies. Although Starbucks denied and denies any unlawful conduct, Starbucks is only challenging the Board's Decision with respect to the Complaint's allegations addressing Starbucks' Gift and Solicitation/Distribution policies.

### A.    **Background**

The Union filed a representation petition on December 20, 2021 (NLRB Case 19-RC-287954) seeking to represent the baristas, shift supervisors, and assistant store managers at Starbucks' Broadway and Denny coffee shop located at 101 Broadway E in Seattle, Washington (the Store) (JA__; ALJ Exh. 4).  Region 19 ordered an election for March 22, 2022, following a pre-election hearing conducted in mid-January 2022. The Union was certified as the bargaining representative of the Store's employees on March 30, 2022. (JA__; ALJ Exh. 6; GC Exh. 4).

### B.    **A Brief Introduction to Starbucks' Policies**

Starbucks refers to its employees as partners. All partners receive a Starbucks Coffee Company Partner Guide, US Store Edition (the Guide) when they are first hired during the onboarding process. (JA__; Tr. 122:12-20; 193:19-22; 199-200;

3

210:5-9; R. Exh. 3; R. Exh. 9). The Guide contains Starbucks' policies governing partners' employment. (JA__; Tr. 122:12-20; 193:19-22; 199-200; 210:5-9; R. Exh. 3; R. Exh. 9). Partners must review the Guide, acknowledge receipt of the Guide, and local management reviews the Guide with partners throughout the course of partners' onboarding training to ensure understanding and compliance. (JA__; Tr. 122:12-20; 193:19-22; 199-200; 210:5-9; R. Exh. 3; R. Exh. 9).

Store managers are provided with a copy of the Guide, and also undergo extensive training in Starbucks' policies and procedures. (JA__; Tr. 308:16-20). The Guide provides store managers with the policies that govern partners' workday. In addition, if store managers believe a partner violated a Starbucks policy, their first resource is Starbucks' "Virtual Coach," an electronic database that walks store managers through common situations and policy violations. (JA__; Tr. 210:14-20). Store managers can also contact their district manager, regional manager, or the partner relations support center for guidance on potential Guide infractions. (JA__; *Id.*; R. Exh. 11). However, the Virtual Coach is meant as a first line response because it empowers store managers to address common issues and instructs them to deliver consistent results in-line with the Guide's policies. (JA__; Tr. 213:1-11).

### C.    Starbucks' Gift and Solicitation/Distribution Policies

The Guide contains a "Gifts and Entertainment" policy (the Gift Policy) stating in pertinent part:

4

> Partners and individuals representing Starbucks must avoid accepting or offering any business courtesy, no matter how modest, if it could appear to be an attempt to influence a business decision, create a real or perceived conflict of interest, or damage Starbucks reputation if it became public knowledge. A business courtesy should never be exchanged if it could be viewed as an attempt for preferential treatment.

(JA__; R. Exh. 9 at 31-32).

The Guide also contains a "Soliciting/Distributing Notices" policy (the Soliciting/Distributing Policy):

> Partners are prohibited from distributing or posting in any work areas any printed materials such as notices, posters or leaflets. Partners are further prohibited from soliciting other partners or non-partners in stores or on company premises during working time or the working time of the partner being solicited. The only exception that may apply is when a partner is engaged in distribution or solicitation related to a Starbucks-sponsored event or activity.

> Persons not employed by Starbucks are at all times prohibited from selling, soliciting, distributing or posting written materials on company premises.

(JA__; R. Exh. 9 at 36).

General Counsel never alleged these policies were unlawful. Starbucks does not have any policies specific to the distribution of Union material on non-worktime to a customer or outside Starbucks' premises. (JA__; Tr. 218:4-12; 311:16-20). In fact, these policies predate the Union's presence at the Store or any other Starbucks location. (JA__; Tr. 218:13-17).

5

### D.    Starbucks Partner Rachel Ybarra is reminded about Starbucks' Gift and Solicitation/Distribution Policies after the Store Manager witnesses Ybarra failing to comply with both policies

On January 26, 2022, a customer named Jennifer Popkin (Popkin) entered the Store to buy coffee. (JA__; Tr. 36-38). Popkin asked for, and received, a Union pin from Rachel Ybarra ("Ybarra"), a Starbucks barista. (JA__; Tr. 36-38). When Popkin made this request to Ybarra - who was still wearing their Starbucks green apron denoting they were on worktime[1] - Ybarra admitted that they were "on the clock" when they walked away from the cash register area behind the bar,[2] left the work floor, and went all the way back to their locker to retrieve the Union pin for Popkin. (JA__; Tr. 39-40; 47:21-22; 76:4-9; 51:12-14; 75:9-11; 142-144; 241-242).

The Store Manager, Pam Mariscal ("Mariscal"), was on the work floor near Ybarra. (JA__; Tr. 165:15-24; 243:1-2). Mariscal knew Ybarra was on the clock at the time because she was on the work floor with Ybarra and Ybarra was serving a customer. (JA__; Tr. 165:15-24; 243:1-2). Ybarra did not tell anyone, including Mariscal who was nearby, that they left the floor for this nonwork-related purpose. (JA__; Tr. 50:8-11; 77-78; 150:8-13; 243:3-5; 320:5-10).

Mariscal was unsure how to handle the situation. (JA__; Tr. 244). She wanted

---

[1] According to Starbucks' policy, partners are supposed to wear their green apron when on worktime and take it off when on break time. (JA__; Tr. 148: 20-22; R Exh. 9: 30).

[2] Ybarra uses the personal pronouns "they" and "them" (JA__; Tr. 248:1-2).

to ensure she followed policy. (JA__; Tr. 244). Mariscal did not initially talk to Ybarra about Ybarra's misconduct. (JA__; Tr. 244:5-10). Instead, Mariscal wanted to get guidance from her district manager, Johnna Turvin ("Turvin"), to ensure she acted in accordance with Starbucks' policy. (JA__; Tr. 301-302).

The next day, on or about January 27, 2022, a person assumed to be a customer entered the store. Mariscal observed this person exchange what appeared to be a hand signal with Ybarra. (JA__; Tr. 268). Ybarra took their 10-minute paid break shortly after this person entered the store. (*Id.*). Ybarra went into the back of the store and returned with a big bag of buttons. (JA__; *Id.*). Ybarra talked with the person in the customer service area and handed that person the buttons. (JA__; Tr. 268-269). Mariscal did not recognize this person. (JA__; Tr. 269). Ybarra did not tell Mariscal the person was a Starbucks partner. (JA__; Tr. 279-280).

Shortly after this second event, Mariscal spoke to Ybarra in private. "Having observed both distributions [January 26 and 27]," [372 NLRB No. 93, slip op. at 1 fn.1], and spoken to her manager for guidance, Mariscal reminded Ybarra that they were not allowed to give out pins while "at work and on company time . . . . on Starbucks property." (JA__; Tr. 78:12-17; 156:6-9; 244-245; Tr. 247:2-3; Tr 249: 2-14.  Mariscal clarified to Ybarra that they could give out buttons and pins outside the Store on Ybarra's free time.  (JA__; Tr. 246-247; Tr. 249:11-14). Mariscal said nothing about the break room/backroom, nor did the context of either incident

7

(January 26 or 27) support a reasonable inference that she was referring to distribution in the break room.

Critically, Mariscal instructed Ybarra they "couldn't be handing out things **to customers** on work time."[3] (JA__; Tr. 244). She clarified, "I just told them, this is not appropriate while you're on the floor and you're working." (JA__; Tr. 247:2-3). Mariscal additionally testified, "[w]hen I mentioned it to Rachel, they made the comment that they were on …a ten-minute break. And I said, that is still considered a company paid-time, so it is not something [distributing pins **to customers**] you should be doing while on the clock."[4] (JA__; Tr. 249:2-6). Mariscal emphasized Ybarra was free to do anything on their off-time outside Starbucks, but "you just can't do it while you're on the clock." (JA__; Tr. 249:11-14; *see also* Tr. 246-247). As the ALJ found, but ultimately disregarded, Ybarra herself understood Mariscal to be referencing distribution of pins to customers while on the clock: "Ybarra said that Mariscal either said work time or company time; whichever it was, Ybarra understood Mariscal was saying that they could not hand out buttons **to customers** while on paid time—while at work on the clock." (372 NLRB No. 93, slip op. at 7;

---

[3] Customers, of course, are found only on the selling floor. They are not found in the break room. By referencing customers, the Store Manager was therefore clearly addressing Ybarra's behavior on the selling floor. Attempting to make this remark broader than it was, the Board's decision omits the fact that Mariscal specifically referenced distribution of pins **to customers.** 372 NLRB No. 93, slip op. at 1 fn.1.

[4] Under wage and hour law, Mariscal's observation was entirely correct as breaks lasting under 20 minutes are compensable time for which employees must be paid. 29 C.F.R. § 785.18.

8

JA__; Tr. 156:12-15, 23-24; 248:14-16).

Mariscal testified she used a conversational and nonthreatening tone of voice. (JA__; Tr. 246-247). Her intent was to remind Ybarra about Starbucks' Gift and Soliciting/Distributing Policies. (JA__; Tr. 246-247). This exchange was not disciplinary in content or context. (JA__; Tr. 246-247).

Ybarra conceded Mariscal "did not specifically say Union [pins]." (JA__; Tr. 78:12-17; Tr. 156:18-22). Ybarra admitted Mariscal did not mention anything about distributing Union paraphernalia to coworkers or refraining from doing so on breaks or before or after Ybarra's shift. (JA__; Tr. 155-156). Ybarra acknowledged Mariscal "didn't say that I could not wear my [Union] pin . . . . she did not say . . . that I could not talk to customers about the Union." (JA__; Tr. 158:12-18). There was no evidence of any Store managers advising partners they could not hand out Union pins on their own time. (JA__; Tr. 312:15-19). Ybarra also testified there was nothing prohibiting them from giving Popkin the Union button outside of work since they knew Popkin as a regular customer that worked nearby. (JA__; Tr. 170-172).

Ybarra admitted the pins in question were not Starbucks-sold goods (JA__; Tr. 78-79). And there is no evidence Starbucks disparately enforced its facially lawful policies. Ybarra asserted they previously gave non-Starbucks goods to other Store customers, such as Valentine's Day stickers to kids in March 2021, social services pamphlets to individuals experiencing homelessness, and $2 bills, but

Ybarra did not know if management was aware of this purported conduct. (JA__; Tr. 79-82).  There was no evidence Store management was aware of the $2 bills. The Valentine's Day stickers were sanctioned by Starbucks to spread holiday cheer. (JA__; Tr. 249-250; 303-304). The social service pamphlets (and the underlying education program) were also sponsored by Starbucks to aid the homeless community if they came in the Store, and partners did not have to leave the floor to get the stickers or pamphlets.  (JA__; Tr. 249-250; 303-304).  In this regard, unlike when Ybarra left the work floor  on worktime to retrieve the pins, the Valentine's Day stickers, social service pamphlets, and $2 bills were kept near where customers received their orders and did not require partners to leave the floor while on worktime. (JA__; Tr. 167-168; 250:22-25).

### E.     The Union files two Unfair Labor Practice charges in January 2022

The Union filed two Unfair Labor Practice charges.

The first charge (19-CA-289275) was filed on January 21, 2022 and alleged Starbucks violated the Act by making statements interfering with partners' rights to comply with a Board subpoena to testify at a representation hearing. Although Starbucks denied and denies it engaged in any unlawful conduct with respect to this charge, it is not seeking review of the Board's Decision and Order to the extent it

addresses the first charge.[5]

The second charge (19-CA-289771) was filed on January 31, 2022, and alleged Starbucks violated the Act by counseling or instructing a partner not to pass out union buttons/pins to customers.

### D. Consolidated Complaint, Hearing, and ALJ's Decision

Region 19 issued a Complaint on August 10, 2022 consolidating both charges and scheduling a hearing for September 13, 2022. Of relevance here, the Complaint alleged "On or about January 27, 2022, Respondent, by Pamela Mariscal ('Mariscal') at the facility, counseled an employee for giving union buttons/pins *to a customer* who had expressed interest in the buttons/pins" and "On or about January 27, 2022, Respondent, by Mariscal at the facility, instructed an employee to refrain from giving union buttons/pins while at work *to customers* in the future." (JA__; Complaint, ¶ 4(c)(d) at 3) (emphasis added). Thus, the focus of the Complaint was alleged restrictions on distributing pins "to customers."

A hearing was conducted on September 13-14, 2022 in Seattle before Administrative Law Judge John T. Giannopoulos ("ALJ"). The ALJ issued a Decision on November 3, 2022. The ALJ concluded Mariscal violated Section 8(a)(1) of the Act by telling Ybarra "union solicitation or distribution" was

---

[5] The subpoena issue referenced in the first charge was unrelated to the Gifts and Solicitation policy which is the focus of this brief.

prohibited "during company paid break periods" (with no reference to customers). (373 NLRB No. 93. Slip op. at 9, Conclusion of Law #5). This theory had never been alleged by the Board. The ALJ cited Board precedent, however the cases cited and relied upon by the ALJ did not address employee solicitation or distribution while on a paid break in the customer sales and service area. Long-standing Board precedent confirms retail establishments, including particularly public restaurants, may always prohibit solicitation and distribution in the customer sales and service areas of an establishment *even during break-time*. The facts confirmed the solicitation occurred in a customer sales and service area, and Mariscal never said anything about Union buttons or pins.

In fact, Counsel for General Counsel's Opening Statement confirmed the incident concerned a customer interaction: "[t]he second 8(a)(1) allegation involves store manager Pam Mariscal admonishing –admonishing an employee who gave a customer union buttons after the customer asked the employee for the buttons." (Tr. 24:20-23). Counsel for General Counsel emphasized: "[i]t is important to note that this scenario I've described is distinguishable from an employee handing out union buttons to other employees while they're both on work time." (Tr. 25:2-4).

Starbucks timely filed exceptions to the ALJ's Decision on December 7, 2022. The Board filed its Decision and Order on June 20, 2023, upholding the ALJ's findings and Decision. In doing so, the Board skirted the caselaw permitting public

restaurants to prohibit solicitation and distribution in the customer sales and service areas, *even during break-time*, by "emphasiz[ing]" that "an employee would have reasonably understood the prohibition to improperly extend beyond the selling floor to the entire store, including nonpublic areas, like the backroom." (373 NLRB No. 93 slip op. at 1 fn. 1 (citing *Sam's Club*, 349 NLRB 1007, 1009 fn. 11 (2007)). Thus, critical to the Board's decision was its construction of Mariscal's remark (specific to handing out pins to customers while on company time, in the context of Ybarra doing that twice over a 2-day period, once while working) as a blanket prohibition on all "union solicitation and distribution" anywhere on the premises. Member Kaplan dissented, in part. He concluded Mariscal's initial statement (that Ybarra should not distribute items in a customer area during work hours) was not a violation. *See Starbucks Corporation*, 372 NLRB No. 93 at 1 n.4. However, Member Kaplan concluded Mariscal's comment that "Ybarra's paid break period was 'company time' and that they were 'on the clock' violated the Act." *Id*. Other facts as relevant are noted below.

## V.    SUMMARY OF ARGUMENT

Board precedent confirms "retail marketing establishments, including public restaurants" may lawfully prohibit solicitation and distribution in customer service areas even during break time. *Beth Israel Hosp. v. NLRB*, 437 U.S. 483, 506 (1978). *McDonald's Corp.,* 205 NLRB 404, 405, 407-08 (1973); *see also Marriott Corp*.,

223 NLRB 978 (1976); *Bankers Club, Inc*., 218 NLRB 22 (1975); *Marshall Field & Co*., 98 NLRB 88 (1952), *enforced*, 200 F.2d 375 (7th Cir. 1953).As will be discussed below, the ALJ cited and relied upon inapposite authority—cases or decisions where employers sought to prohibit solicitation during non-working time in non-working areas—and failed to analyze the existing special circumstances providing support for Starbucks' prohibition of distribution in customer service/sales areas.

Here, the two incidents occurred in the customer service/sales area (not a break room or other non-working area). Long-standing Board precedent allows retail employers to prohibit solicitation even during break time when it occurs in non-break areas (customer service/sales areas) where customers may be exposed to the solicitation.  The ALJ quite simply failed to correctly apply Board precedent and the rule he was relying upon.

The Board adopted the ALJ's findings, addressing this allegation in a single footnote. In its decision, the Board nodded to the authority cited above, but stated the infirmity in Mariscal's remark was that "an employee would have reasonably understood the prohibition to improperly extend *beyond the selling floor* to the entire store, including nonpublic areas, like the backroom." (373 NLRB No. 93 slip op. at 1 fn. 1. (citing *Sam's Club*, 349 NLRB 1007, 1009 fn. 11 (2007)). *Sam's Club* is inapposite, as that case did not involve distribution on a selling floor at all. In any

14

event, not even Ybarra herself understood Mariscal's remark extended beyond the selling floor. And to reach this strained conclusion, the Board conveniently omitted that Mariscal's remark, as Ybarra conceded, was specific to customers. No reasonable employee would have construed a remark concerning customers to also "extend" to the break room, where customers cannot be found.

On the facts, the ALJ's decision, as adopted by the Board, incorrectly concluded the manager, Mariscal, "prohibit[ed] all union solicitation or distribution during company paid break periods." *Starbucks Corp.*, 372 NLRB No. 93 at 9, Conclusion of Law #5 (June 20, 2023) (JA__; ALJD 14-15). This finding was inaccurate on four grounds: (1) both incidents occurred in the customer service/sales area, and not in non-work areas (JA__; Tr. 76-77, 78, 142-150, 156, 170, 245-246, 249, 267-269, 279-280, 301, 321-329; *see also* Tr. 24-25); (2) Ybarra was on the clock during both incidents, and in the first she was actually working, as demonstrated by her wearing her Starbucks green apron; (3) contrary to the Board's and ALJ's conclusions, there never was any actual evidence Mariscal specifically targeted only union buttons or pins; and (4) Mariscal's remarks were specific to distribution of pins to customers, which plainly did not extend beyond the selling floor. Instead, Mariscal was reminding a partner of facially neutral, indisputably lawful policies that had nothing to do with the Union. (JA__; Tr. 244-49).

Finally, it cannot escape attention the Board's core allegations were never

15

proved. The Complaint allegations, as reinforced by Counsel for the General Counsel's Opening Statement at hearing, narrowly contended Starbucks counseled or instructed an employee against giving customers Union buttons or pins. The Board's Order addresses a materially different, far broader allegation, barring Starbucks from "[p]rohibiting all *union* solicitation or distribution during company paid break periods." The Board's reference to solicitation was unfounded. There was no allegation that Starbucks prohibited solicitation in its break rooms. The Complaint allegation was specific to distribution of pins. This further illustrates the Board's lack of faithfulness to the record and its caselaw. With respect to distribution, Ybarra conceded no specific statement targeting Union material was ever made. (JA__; Tr. 78, 155-58). The only thing that happened was Mariscal reminded Ybarra about Starbucks' lawful policies. (JA__; Tr. 244-49). It cannot be unlawful for an Employer to explain a lawful policy to an Employee. The Complaint never alleged anything about break-time issues and the Board simply manufactured a connection to the break room to escape the infirmity in the ALJ Decision, which would allow Starbucks partners to engage in solicitation and distribution in its sales areas, provided they are on break time. The Board's theory was not what was pled, it is not consistent with what Ybarra herself understood in the moment, and no reasonable employee would have construed a comment about distributing pins to customers to encompass the break room.

16

The ALJ misconstrued the law and facts and the Board, in an apparent effort to correct the ALJ, misapplied its own precedent and based its decision on incorrect facts and/or undisputed facts that the Board simply ignored (notably, Ybarra's statement that Mariscal's comment specifically referenced customers and she understood that comment to be a prohibition of distributing pins *to customers* while on working time). The Court should deny the Board's petition for enforcement of the Board's Decision addressing Starbucks' Gift and Solicitation/Distribution Policies.

## VI.    STANDING

Starbucks has standing to seek review in this Court as an aggrieved party to a final order of the Board under 29 U.S.C. § 160(f). *See Retail Clerks Local 1059 v. NLRB*, 348 F. 2d 369, 370 (D.C. Cir. 1965).

## VII.    STANDARD OF REVIEW

Board orders "cannot be enforced" without court approval under the NLRA. *See Circus Circus Casinos, Inc. v. NLRB*, 961 F.3d 469, 475 (D.C. Cir. 2020). "Judicial review of the Board's decisions and orders must evaluate both the Board's statements of law and application to the facts." *Id.* at 483; *see also Hawaiian Dredging Constr. Co. Inc. v. NLRB*, 857 F.3d 877, 885 (D.C. Cir. 2017). The APA prohibits administrative agencies, including the NLRB, from issuing orders that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with

17

law." *See ABM Onsite-Servs.-West, Inc. v. NLRB*, 849 F.3d 1137, 1142 (D.C. Cir. 2017) (quoting 5 U.S.C. § 706(2)(A)). This Court has repeatedly held Board findings that are inconsistent with the agency's own precedents do not evidence reasoned decision making and are arbitrary and capricious. *See Everport Terminal Servs. v. NLRB*, 47 F.4th 782, 793-94 (D.C. Cir. 2022); *Circus Circus Casinos, Inc.*, 961 F.3d at 475; *Tramont Mfg., LLC v. NLRB*, 890 F.3d 1114, 1119 (D.C. Cir. 2018).

As Then-Circuit Judge (now Chief Justice) Roberts once instructed, "reasoned decisionmaking" requires the NLRB to provide a reasoned explanation if it departs from its own precedent. *See Lemoyne-Owen College v. NLRB*, 357 F.3d 55, 60 (D.C. Cir. 2004). The Board cannot "simply ignore" facts or arguments. *Lemoyne-Owen*, 357 F.3d at 61. A reviewing court "cannot uphold silence." *Id*. "The need for an explanation is particularly acute when an agency is applying a multi-factor test through case-by-case adjudication." *Id*.

"A court reviewing an *ipse dixit* outcome that seems inconsistent with proffered precedent is left to attempt to discern for itself which factual differences might have been determinative, without guidance from the agency, and to assess whether making such distinctions controlling is rational or arbitrary, again without any agency explanation of why particular factors make a difference." *Lemoyne-College*, 357 F.3d at 61.

Relatedly, this Court also routinely declines to enforce Board findings that lack the support of substantial evidence. *See Everport Terminal Servs.*, 47 F.4th at 793-94; *Windsor Redding Care Ctr., LLC v. NLRB*, 944 F.3d 294, 299 (D.C. Cir. 2019); *Cellco Partnership v. NLRB*, 892 F.3d 1256, 1260-61 (D.C. Cir. 2018); *Fred Meyer Stores, Inc. v. NLRB*, 865 F.3d 630, 638 (D.C. Cir. 2017); *see also Allentown Mack Sales & Serv. v. NLRB*, 522 U.S. 359, 377-78 (1998).

## VIII. ARGUMENT

### A.   Board precedent confirms objectively verifiable evidence is necessary to establish a Section 8(a)(1) violation

Under Section 8(a)(1) of the Act, it is an unfair labor practice for an employer "to interfere with, restrain, or coerce employees" in the exercise of rights guaranteed in Section 7 of the Act.  29 U.S.C. § 158(a)(1).  The Board applies an objective standard to determine whether employer communications to employees violate Section 8(a)(1).  The Board evaluates whether, under all the circumstances, statements tended to interfere with the free exercise of employee rights.  *See Miller Electric Pump & Plumbing*, 334 NLRB 824 (2001); *see also Mediplex of Danbury*, 314 NLRB 470, 472 (1994); *Rossmore House*, 269 NLRB 1176, 1177 (1984).   As such, intent and subjective views are not determinative.  *See Advanced Life Sys. Inc. v. NLRB*, 898 F.3d 38, 44-45 (D.C. Cir. 2018).

To support a Section 8(a)(1) violation, the Board must establish, under all the circumstances, that when objectively viewing the alleged incident, the employer's

conduct reasonably tended to restrain, coerce, or interfere with employees' rights protected by the Act. *See Mediplex of Danbury*, 314 NLRB at 472; *see also Rossmore House*, 269 NLRB at 1177. This requires specific evidence because bald claims of objective coercivity have never been held to meet that burden. *See e.g., National Dance Institute – New Mexico, Inc.,* 346 NLRB No. 35 (2016) (dismissing complaint because the General Counsel did not satisfy their burden of proof with specific evidence).

This analysis does not occur in a vacuum.  As the Third Circuit noted in *FDRLST Media, LLC v. NLRB*, 35 F.4th 108 (3rd Cir. 2022), any finding of a prohibited statement must be made by examining the statement in its full context and "with due consideration of the audience and accompanying circumstances" because "[c]ontext is an important part of language," which is "especially true where, as in this case, pure speech is at issue." *Id*. at 122.

The Board recognizes there is a natural tendency for witnesses to testify as to their impressions or interpretations of what was allegedly said to them, rather than testifying to a verbatim account of what actually occurred.  *See Country Skillet Poultry Co.*, 271 NLRB 847, 848 (1984).  As a result, the Board emphasizes specific evidence of any comments must be presented because vague accounts of what allegedly happened cannot prove a Section 8(a)(1) violation. *See Frank Mashuda Co., Inc.*, 221 NLRB 233, 237 n.7 (1975) (evidence "too vague" cannot support a

20

Section 8(a)(1) unfair labor practice finding); *see also Ben Franklin Division*, 251 NLRB 1512, 1519 (1980) (statement was entirely too vague and ambiguous to come within Section 8(a)(1)); *Phoenix Glove Co.*, 268 NLRB 680, 680 n.3 (1984) (overruled the ALJ's Section 8(a)(1) violation finding because the comments at issue were "too vague and ambiguous to rise to the level of a violation of the Act."). In addition to specificity, the alleged statements must be clear and not open to interpretation. *See Tayko Industries*, 214 NLRB 84, 89 (1974) (statements in question were "vague and subject to more than one interpretation" and therefore dismissed). In this regard, the Board, with Circuit Court approval, has long held that vague statements "subject to the interpretation of the listener" cannot support a Section 8(a)(1) violation. *In Re Equip. Trucking Co., Inc.*, 336 NLRB 277, 280 n.3 (2001) (citing *Standard Products Co.,* 281 NLRB 141, 148 (1986), *enfd. in relevant part*, 824 F.2d 291 (4th Cir. 1987)).

> **B.      The Board improperly failed to apply governing precedent confirming retail employers may enforce no solicitation policies at all times in customer service and sales areas even when employees are on break.**

The undisputed facts confirm that <u>both</u> incidents occurred in the front customer service and sales area. (JA__; Tr. 76-77, 78, 142-150, 156, 170, 245-46, 249, 267-269, 279-280, 301, 321-329; *see also* Tr. 24-25). The ALJ cited but dismissed governing precedent confirming retail employers may always enforce no solicitation and no distribution policies in customer sales and service areas. *Beth*

*Israel Hosp. v. NLRB*, 437 U.S. 483, 506 (1978). (JA__; ALJD 14). The ALJ concluded "there is no need to determine whether Starbucks qualifies as a public restaurant or whether the lobby area . . . is a sales area" because Mariscal's statement had "prohibited all solicitation/distribution on behalf of the union during paid breaks". (JA__; ALJD 15 n.21).

Having reached the broadest possible interpretation of the store manager's remarks – finding the manager prohibited "all" union solicitation/distribution at all times, including paid break times – the ALJ cited and relied upon *Valmont Industries, Inc. v. NLRB*, 244 F.3d 454, 469 (5th Cir. 2001), to support his conclusion that enforcement of the non-solicitation policy violated Section 8(a)(1). *Valmont* holds that prohibitions on break time **in a break area** are prohibited. *Valmont* cited and relied upon *Cooper Tire Rubber Co. v. NLRB,* 957 F.2d 1245, 1249 (5th Cir. 1992), which likewise dealt with a break area. Similarly, the ALJ cited and relied upon *Eastex, Inc. v. NLRB*, 437 U.S. 556, 558 (1978) and *USAA v. NLRB*, 387 F.3d 908, 914 (D.C. Cir. 2004), but both these decisions also addressed distribution of union material during non-working time **in non-working areas**.

As shown, and as neither the ALJ nor the Board disputed, long-standing Board precedent allows restaurants and other retail establishments to prohibit solicitation during break time when and where such activity may occur where customers are located (or where customers may see and hear what is occurring). *See McDonald's*

*Corporation*, 205 NLRB 404, 405, 407-08 (1973); *see also Marriott Corp*., 223 NLRB 978 (1976); *Bankers Club, Inc*., 218 NLRB 22 (1975); *Marshall Field & Co*., 98 NLRB 88 (1952), *enforced*, 200 F.2d 375 (7th Cir. 1953). That is exactly what happened here. Both incidents occurred in the customer sales/service area where customers could have heard or seen the solicitation conduct. (JA__; Tr. 268-270, 276; *see also* Tr. 24-25).

In *McDonalds*, a case more analogous to the present, the Board adopted the ALJ's proposed Decision which upheld a ban on solicitation in working areas serving the public even during nonworking break time. *McDonalds*, 205 NLRB at 407. The Board observed: "[s]hould such solicitation occur in such circumstances in working areas, **even during nonworking time**, this Employer like any employer could and no doubt would contemplate serious economic losses including a prospective loss of good will among some customers who were prounion and others who were antiunion." *Id*. (emphasis added).

The Board explained, "[t]he employees' rights as guaranteed by Section 7 of the Act cannot be considered as isolated from the Employer's rights to have a business where the customers in his retail establishments are not deprived of their rights to participate in the eating of his fare free from perhaps exacerbating disturbances which might readily arise from the exercise by the Employer's employees of their Section 7 rights in working areas **even during their nonwork**

23

**time**." *McDonalds*, 205 NLRB at 407 (emphasis added).

The majority and concurring opinions in *Beth Israel* recognized this same reasoning and conclusion even where nonworking employees were concerned. *See Beth Israel*, 437 U.S, at 506 (majority), at 512 (Powell, J., concurring). The majority acknowledged "rules restricting employee solicitation during nonworking time in nonworking areas are presumptively invalid in the absence of special circumstances to justify them." *Beth Israel*, 437 U.S. at 488. The concurring opinion cited *McDonald's* with approval, observing where "on-duty and off-duty employees were 'in close contact with each other' and with customers" such circumstances would justify a no solicitation policy. *Id.* at 512.

In *Marriott Corporation*, 223 NLRB 978 (1976), the Board similarly emphasized retail establishments such as restaurants "because of the nature of their business, may prohibit solicitation, **even during break and lunch periods**, in areas where customers are likely to be present." *Id.* at 978.

In *Bankers Club Inc*., 218 NLRB 22 (1975), the Board upheld and adopted the ALJ's proposed Decision confirming it was lawful for a retail establishment to prohibit solicitation in a customer service/sale area even during non-working time. The Board noted, "[t]he Board has long approved employer rules prohibiting all solicitation, **even during employees' nonworking time**, in the selling areas of stores and other establishments, such as restaurants, on the theory that such activity

24

might tend to drive away customers." *Id.* at 27 (emphasis added).

In adopting and affirming the ALJ, the Board emphasized that, like the ALJ, it believed Mariscal's comment extended the prohibition on distribution "beyond the selling floor." But whereas the ALJ had focused on the manager's alleged prohibition of "all union solicitation/distribution" on paid break time (which runs afoul of the caselaw cited above allowing retail employers to prohibit such conduct on the sales floor), the Board more narrowly focused on whether the manager's remarks prohibited solicitation/distribution *away from* the sales floor. In finding a violation, the Board found that the manager's remarks to Ybarra prohibited all union solicitation/distribution *"beyond the selling floor,"* including non-public areas like the backroom. The Board explained its reasoning as follows:

> The judge concluded that Mariscal's statements, taken together, violated Sec. 8(a)(1) by prohibiting all union distribution during paid break periods. In adopting this finding, we emphasize that an employee would have reasonably understood the prohibition to improperly extend *beyond the selling floor to the entire store, including nonpublic areas, like the backroom. See, e.g., Sam's Club*, 349 NLRB 1007, 1009 fn. 11 (2007).

(373 NLRB No. 93, slip op. at 1 fn. 1).

As this Court has sated, the Board cannot "simply ignore" facts or arguments. *Lemoyne-Owen*, 357 F.3d at 61. Yet, in finding that a reasonable employee would have construed Mariscal's remark as prohibiting distribution in the "entire store," including "the backroom," the Board ignored Ybarra's testimony that she

25

understood Mariscal was referring to distributing pins *to customers*. The ALJ described Ybarra's testimony as follows:

> "Ybarra said that Mariscal either said work time or company time; whichever it was, Ybarra understood Mariscal was saying that they could not hand out buttons ***to customers*** while on paid time—while at work on the clock."

(373 NLRB No. 93, slip op. at 7). Ybarra's own testimony undermines the Board's rationale. In context, where Mariscal had observed two incidents of Ybarra engaging in distribution on the sales floor, her "prohibition" on distributing buttons "to customers while on paid time" cannot be reasonably construed as an outright prohibition on any distribution of stores anywhere in the store, including the backroom where no customers are present. Notably, the Board itself identifies the backroom as a "nonpublic area."

The Court should deny the Board's petition for enforcement of the Board's Decision addressing Starbucks' Gift and Solicitation/Distribution Policies.

C.    **The Board relied on provably incorrect facts, concluding Starbucks violated Section 8(a)(1) by enforcing its Gifts and Solicitation policies in non-working time in non-work areas, but the facts confirmed the policy violations occurred in a customer service/sale area, and nothing was ever said to specifically target Union buttons or pins**

The ALJ's core finding, adopted by the Board, was that "by instructing Ybarra that they could not pass out <u>union buttons and pins</u> during her company paid break-time, Respondent violated Section 8(a)(1) of the Act." (JA__; ALJD 15) (emphasis

26

added). Ybarra conceded Mariscal never mentioned "Union" pins or buttons. (JA__; Tr. 78: 12-17, Tr. 247-249).

Mariscal simply instructed Ybarra they "couldn't be handing out things *customers* on work time." (JA__; Tr. 244). She clarified, "I just told them, this is not appropriate while you're on the floor and you're working." (JA__; Tr. 247:2-3). Mariscal additionally testified, "[w]hen I mentioned it to Rachel, they made the comment that they were on …a ten-minute break. And I said, that is still considered a company paid-time, so it is not something you should be doing while on the clock." (JA__; Tr. 249:2-6). Mariscal emphasized Ybarra was free to do anything on their off-time outside Starbucks, but "you just can't do it while you're on the clock." (JA__; Tr. 249:11-14; *see also* Tr. 246-247).

Furthermore, the ALJ's core finding, that "by instructing Ybarra that they could not pass out union buttons and pins during her company paid break-time, Respondent violated Section 8(a)(1) of the Act," was never alleged in the Complaint. General Counsel never sought amendment.

The Complaint alleged that "On or about January 27, 2022, Respondent, by Pamela Mariscal ( 'Mariscal') at the facility, counseled an employee for giving union buttons/pins *to a customer* who had expressed interest in the buttons/pins" and "On or about January 27, 2022, Respondent, by Mariscal at the facility, instructed an employee to refrain from giving union buttons/pins while at work ***to customers*** in

27

the future." (JA__; Complaint, ¶ 4(c)(d) at 3) (emphasis added). Thus, the focus of the Complaint was alleged restrictions on distributing pins "to customers."

As already noted, there was never any evidence to support these allegations. Mariscal counseled Ybarra for giving buttons or pins, she did not care whether the pins were union in nature. (Tr. 244-49). She never even mentioned "Union" pins. (JA__; Tr. 78:12-17; Tr. 247-49). In any event, Mariscal's comment, by context and language, was specifically limited to distribution of buttons *to customers.* Mariscal was enforcing a facially neutral, lawful policy generally applicable to all circumstances. (JA__; Tr. 244-49).  Ybarra conceded the focus was on buttons/pins being distributed *to customers* during worktime. (JA__; Tr. 154-58).

The Court should deny the Board's petition for enforcement of the Board's Decision addressing Starbucks' Gift and Solicitation/Distribution Policies.

**D.**     **It cannot be unlawful for an employer to counsel or instruct an employee to comply with a lawful policy and the objectively verifiable facts along with all reasonable inferences confirm no Section 8(a)(1) violation occurred**

There is a disturbing implication underlying the Board's decision; specifically, employers somehow violate the Act by doing nothing more than informing employees about facially neutral, lawful workplace policies. Starbucks Gifts and Soliciting/Distributing Policies are facially neutral. They apply to all gifts or solicitations. The policies do not target union activity. Indeed, the policies were adopted long before any union campaign began. Mariscal merely reminded Ybarra

about these policies (without discipline) after Ybarra twice violated these policies during worktime, in her presence. Mariscal's words to Ybarra cannot reasonably and objectively be interpreted as threatening, coercive, or otherwise unlawful under Section 8(a)(1) of the Act.

The Board never alleged Starbucks' policies were unlawful, and in fact the policies were a lawful exercise of Starbucks' legitimate business judgment and discretion. A long line of Board precedent confirms the Board does not substitute its judgment for an Employer's judgment in terms of policies being adopted or enforced. *See The New Otani Hotel & Garden*, 325 NLRB 928, 942 (1998); *Detroit Paneling Systems, Inc*., 330 NLRB 1170, 1171 n.6 (2000); *Fluor Daniel, Inc*., 304 NLRB 970, 970-71 (1991).

The Board's Complaint never alleged anything more than Mariscal "counseled" or "instructed" Ybarra. It is uncontested Ybarra's conduct, regardless of the content on the pins they gave away, violated the Gifts Policy, the Soliciting/Distributing Policy, and they further left the work floor and used worktime for a non-work function. Mariscal, who witnessed all of this, could have spoken to Ybarra immediately. But instead, Mariscal sought guidance from Turvin with regards to this issue before speaking to Ybarra. With full knowledge of Starbucks' policies, the following day, Mariscal spoke to Ybarra, in private, and told Ybarra that they could not give out pins while "at work and on company time . . . . on

29

Starbucks' property." (JA__; Tr. 246-47). In fact, Ybarra testified that Mariscal's comments were specific to worktime, which Ybarra understood as non-breaktime, and customers. (JA__; Tr. 156-58). Mariscal did not mention the Union and she even went the extra mile and told Ybarra that they could give out Union pins outside of the Store on Ybarra's free time. (JA__; Tr. 244-47). By all accounts, including the language used in the Complaint, this was not a disciplinary action or even a coaching; rather, Mariscal merely informed Ybarra about Starbucks' lawful policies.

Objectively analyzed, Mariscal's comments never interfered with or restrained Ybarra from engaging in Section 7 Activity. *See Miller Electric Pump & Plumbing*, 334 NLRB 824; *see also Mediplex of Danbury*, 314 NLRB at 472 (1994); *Rossmore House*, 269 NLRB at 1177. There are no allegations the Gifts or the Soliciting/Distributing Policies are unlawful. Mariscal merely instructed Ybarra about those policies. Mariscal simply told Ybarra that they could not give out pins while "at work and on company time . . . . on Starbucks' property." (JA__; Tr. 246-47). Given that Mariscal simply explained Starbucks' lawful policy, her conduct was not coercive or somehow violative of the Act. Even if the Board considered subjectivity, which it does not, s*ee Advanced Life Sys. Inc.*, 898 F.3d at 44-45, the only reasonable subjective interpretation of Mariscal's words is a review of Starbucks' lawful policies.

Starbucks' policies did not mention or refer to unions. Starbucks' policies

30

applied to any gifts, solicitations, or distributions. Ybarra may have subjectively believed Mariscal's instruction was related to Union buttons/pins. However, it is undisputed Mariscal only emphasized Starbucks' policies. The policies being what they were (and are) no reasonable employee would conclude Mariscal was interfering with rights protected by Section 8(a)(1).

The background circumstances support this conclusion. When examining Mariscal's comments in context with due consideration to the surrounding circumstances, *FDRLST Media, LLC*, 35 F.4th at 122, an objective review could only conclude Mariscal did not violate Section 8(a)(1) of the Act. The Board has long recognized "[w]orking time is for work." *Adtranz ABB Daimler-Benz Transportation, N. A., Inc. v. NLRB*, 253 F.3d 19, 28-29 (D.C. Cir. 2001); *Our Way, Inc.*, 268 NLRB 394, 395 (1983); *Peyton Packing Co*., 49 NLRB 828, 843 (1943).

For example, in *Omni Spectra, Inc.*, 186 NLRB 673 (1970), employees argued over union membership cards, which took place during worktime, but stemmed from an incident that occurred during a break. Management advised the employees that they could carry on union activities before and after work as well as during breaks, but that the employees' union activities should not "bubble over" into working time. *Id.* at 673. In *Omni Spectra*, the Board overturned the ALJ's finding that this admonition was unlawful as the comments were aimed at curtailing the employees'

"disruptions of work." The Board further noted that the employees at issue would have only "understood the warnings as having been prompted by and in reference to the incident in which they had, in fact, allowed their union activities to extend into working time." *Id.*

Here, as in *Omni Spectra*, Ybarra used worktime for nonwork-related activity that interfered with their work. Just as in *Omni Spectra*, Mariscal's admonition to Ybarra was the same—they could give out pins to customers on their own time outside of Starbucks' property but could not do so while on company time. Moreover, and further cutting against the alleged coercivity of Mariscal's comments, given that Ybarra stole company time, Mariscal could have disciplined them, but instead chose to just reinforce Ybarra's understanding of Starbucks' policy.

The Board's attempt to skirt the foregoing authority by construing Mariscal's comments as prohibiting all union solicitation and distribution in the entire store, including the backroom, has no factual support. First, there is nothing in the Complaint or the evidence that suggests the manager banned all union "solicitation" in the entire store. The Board's Order should not be enforced for that reason alone. Second, the context of the manager's remarks concerning "distribution" was two incidents of Ybarra distributing union pins to customers. Third, the language the manager used, as reflected in the Complaint and in the ALJ's summary of Ybarra's own testimony, was specific to distributing pins to customers. As the Board itself

noted, the backroom is a nonpublic area where, naturally, customers are not present. Thus, Mariscal's words to Ybarra cannot reasonably and objectively be interpreted as threatening, coercive, or otherwise unlawful under Section 8(a)(1) of the Act.

The Court should deny the Board's petition for enforcement of the Board's Decision addressing Starbucks' Gift and Solicitation/Distribution Policies.

### E.      The Board's Order Is Overbroad

For the foregoing reasons, the Board's Order should not be enforced in any respect. The Board manufactured a link to the backroom by ignoring the context of the manager's remarks and Ybarra's own recollection of the language used (limiting the remark to distributing pins to customers). But to the extent the Board's Order is enforced, the Board's adoption of the ALJ's Order is plainly overbroad. Paragraph 1(c) of the Order provides that Starbucks must cease and desist from "Prohibiting all union solicitation or distribution during company paid break periods." A prohibition on "solicitation" was not alleged or litigated. Further, the Order with respect to distribution goes too far. To the extent there was a violation of Section 8(a)(1), the Board emphasized that the violation was due to the manager's remarks prohibiting solicitation/distribution "beyond the selling floor." As written, however, the Board's Order broadly permits union solicitation/distribution anywhere, including the sales floor, provided the employee is on break. That is not permissible under the Board's own authority governing retail establishments. At minimum, this case should be

remanded to the Board for reconsideration of its Order in light of that precedent.

## IX.    CONCLUSION

The Court should deny the Board's petition for enforcement of the Board's

Decision addressing Starbucks' Gift and Solicitation/Distribution Policies.

Respectfully submitted,

*/s/ Maurice Baskin*
Maurice Baskin
Littler Mendelson, P.C.
815 Connecticut Ave., NW, Suite 400
Washington, D.C.
202-842-3400
mbaskin@littler.com

*Attorney for Starbucks Corporation,*
*d/b/a Starbucks Coffee Company*

34

**CERTIFICATE OF WORD COUNT COMPLIANCE**

Pursuant to FRAP 32(a)(7) the Petitioner certifies that this motion contains 7,837 words of proportionally-spaced, 14-point type, and the word processing system used was Microsoft Word.

*/s/Maurice Baskin*
Maurice Baskin

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing Petitioner's Opening Brief was electronically transmitted to the Court this 2nd day of October, 2023, using the Court's ECF filing system, and was served on all counsel via electronic notice pursuant thereto.

*/s/Maurice Baskin*
Maurice Baskin

# STATUTORY ADDENDUM

SECTION 7 OF THE NLRA ........................................................................ A-1

SECTION 8 OF THE NLRA ........................................................................ A-1

SECTION 10 OF THE NLRA ...................................................................... A-1

SECTION 706 OF THE APA ...................................................................... A-3

29 C.F.R. § 785.18 .................................................................................... A-3

## Section 7 of the NLRA, 29 U.S.C. § 157:

Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a)(3) of this title.

## Section 8 of the NLRA, 29 U.S.C. § 158:

### (a) Unfair labor practices by the employer

It shall be an unfair labor practice for an employer—

**(1)** to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;  * * *

## Section 10 of the NLRA, 29 U.S.C. § 160:

### (e) Petition to court for enforcement of order; proceedings; review of judgment

The Board shall have power to petition any court of appeals of the United States, or if all the courts of appeals to which application may be made are in vacation, any district court of the United States, within any circuit or district,

A-1

respectively, wherein the unfair labor practice in question occurred or wherein such person resides or transacts business, for the enforcement of such order and for appropriate temporary relief or restraining order, and shall file in the court the record in the proceedings, as provided in section 2112 of title 28. Upon the filing of such petition, the court shall cause notice thereof to be served upon such person, and thereupon shall have jurisdiction of the proceeding and of the question determined therein, and shall have power to grant such temporary relief or restraining order as it deems just and proper, and to make and enter a decree enforcing, modifying and enforcing as so modified, or setting aside in whole or in part the order of the Board. No objection that has not been urged before the Board, its member, agent, or agency, shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances. The findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall be conclusive. If either party shall apply to the court for leave to adduce additional evidence and shall show to the satisfaction of the court that such additional evidence is material and that there were reasonable grounds for the failure to adduce such evidence in the hearing before the Board, its member, agent, or agency, the court may order such additional evidence to be taken before the Board, its member, agent, or agency, and to be made a part of the record. The Board may modify its findings as to the facts, or make new findings by reason of additional evidence so taken and filed, and it shall file such modified or new findings, which findings with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall be conclusive, and shall file its recommendations, if any, for the modification or setting aside of its original order. Upon the filing of the record with it the jurisdiction of the court shall be exclusive and its judgment and decree shall be final, except that the same shall be subject to review by the appropriate United States court of appeals if application was made to the district court as hereinabove provided, and by the Supreme Court of the United States upon writ of certiorari or certification as provided in section 1254 of title 28.

**(f) Review of final order of Board on petition to court**

Any person aggrieved by a final order of the Board granting or denying in whole or in part the relief sought may obtain a review of such order in any United States court of appeals in the circuit wherein the unfair labor practice in question was alleged to have been engaged in or wherein such person resides or transacts business, or in the United States Court of Appeals for the District of Columbia, by filing in such a court a written petition praying that the order of the Board be modified or set aside. A copy of such petition shall be forthwith transmitted by the clerk of the court to the Board, and thereupon the aggrieved party shall file in the

2

court the record in the proceeding, certified by the Board, as provided in section 2112 of title 28. Upon the filing of such petition, the court shall proceed in the same manner as in the case of an application by the Board under subsection (e), and shall have the same jurisdiction to grant to the Board such temporary relief or restraining order as it deems just and proper, and in like manner to make and enter a decree enforcing, modifying, and enforcing as so modified, or setting aside in whole or in part the order of the Board; the findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall in like manner be conclusive.

## Section 706 of the APA, 5 U.S.C. § 706:

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall— * * *

**(2)** hold unlawful and set aside agency action, findings, and conclusions found to be—

**(A)** arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

## 29 C.F.R. § 785.18:

Rest periods of short duration, running from 5 minutes to about 20 minutes, are common in industry. They promote the efficiency of the employee and are customarily paid for as working time. They must be counted as hours worked. Compensable time of rest periods may not be offset against other working time such as compensable waiting time or on-call time. (*Mitchell* v. *Greinetz,* 235 F. 2d 621, 13 W.H. Cases 3 (C.A. 10, 1956); *Ballard* v. *Consolidated Steel Corp., Ltd.,* 61 F. Supp. 996 (S.D. Cal. 1945))

3