ORAL ARGUMENT SCHEDULED FOR FEBRUARY 9, 2024

Nos. 23-1171, 23-1188

# UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

STARBUCKS CORPORATION, d/b/a STARBUCKS COFFEE COMPANY,

*Petitioner,*

v.

NATIONAL LABOR RELATIONS BOARD,

*Respondent,*

And

WORKERS UNITED,

*Intervenor.*

On Appeal from the National Labor Relations Board

## FINAL BRIEF OF INTERVENOR WORKERS UNITED

Dmitri Iglitzin, WSBA No. 17673
Marina Multhaup, WSBA No. 58877
BARNARD IGLITZIN & LAVITT, LLP
18 West Mercer Street, Suite 400
Seattle, WA  98119
Telephone: 206-257-6003
Fax: 206-378-4132
iglitzin@workerlaw.com
multhaup@workerlaw.com

**DISCLOSURE STATEMENT PER 26.1**

Intervenor Workers United is a labor union. Workers United has no parent corporation and no corporation or entity owns 10% or more of its stocks or assets.

## CERTIFICATE AS TO PARTIES, RULINGS UNDER REVIEW, AND RELATED CASES

Pursuant to Circuit Rule 28(a)(1), counsel for Workers United ("the Union") certify the following:

**A. *Parties and Amici:*** Starbucks Corporation d/b/a Starbucks Coffee Company ("Starbucks") was the respondent before the National Labor Relations Board ("the Board") and is the Petitioner in this court proceeding. Workers United, affiliated with Service Employees International Union, was the charging party before the Board and has intervened in support of the Board in this proceeding. The General Counsel for the Board was a party before the Board.

**B. *Rulings Under Review:*** The ruling under review is a Decision and Order of the Board, Starbucks Corporation, 372 NLRB No. 93, issued against Starbucks on June 20, 2023.

**C. *Related Cases:*** This case has not been previously before this Court. The Union is not aware of any related cases pending to this Court or any other Court.

i

## TABLE OF CONTENTS

STATEMENT OF THE ISSUES.................................................................1

RELEVANT STATUTORY PROVISIONS ............................................1

STATEMENT OF THE CASE................................................................1

SUMMARY OF ARGUMENT ...............................................................2

STANDING ............................................................................................3

ARGUMENT ..........................................................................................4

    I.  The ability of employees to engage in union solicitation and the distribution of union materials to one another in the workplace is fundamental to the Act……………………………………………………………… 4

   II.  The unlawful action at issue here is what Starbucks communicated to its employee, which in this case went far beyond the particular circumstances that may have prompted that communication, and Starbucks did not need to contemporaneously enforce its unlawful rule in order for that communication to properly have been held unlawful……………………………………… 7

CONCLUSION .....................................................................................13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Food Store Emp. Union, Local 347, Amalgamated Meat Cutters &*
*Butcher Workmen of N. Am., AFL-CIO v. N. L. R. B.,*
418 F.2d 1177 (D.C. Cir. 1969)....................................................................11, 12

*Gale Products Div., Outboard Marine Corp.,*
142 NLRB 1246 (1963), *enforcement denied sub nom. N. L. R. B.*
*v. Gale Products, Div. of Outboard Marine Corp.,* 337 F.2d 390
(7th Cir. 1964)............................................................................................6

*International Union, United Automobile, Aerospace and Agricultural*
*Implement Workers of America, AFL-CIO v. Scofield,*
382 U.S. 205 (1965)....................................................................................3

*N.L.R.B. v. Magnavox Co. of Tennessee,*
415 U.S. 322 (1974)................................................................................6, 13

*NLRB v. Babcock & Wilcox Co.,*
351 U.S. 105 (1956)....................................................................................5

*Peyton Packing Co., Inc.,*
49 NLRB 828 (1943), *enforced sub nom. N.L.R.B. v. Peyton*
*Packing Co.,* 142 F.2d 1009 (5th Cir. 1944) ..........................................5

*Republic Aviation Corp. (Babylon, N.Y.),*
51 NLRB 1186 (1943), *enforced sub nom. Republic Aviation Corp.*
*v. N.L.R.B.,* 142 F.2d 193 (2d Cir. 1944), *aff'd,* 324 U.S. 793, 65 S.
Ct. 982, 89 L. Ed. 1372 (1945) ............................................................5

*Universal Camera Corp. v. NLRB,*
340 U.S. 474 (1951)....................................................................................9

**Statutes**

29 U.S.C. §§ 157, 158....................................................................................4

29 U.S.C. § 159(c) ........................................................................................1

29 U.S.C. § 160(e) ...................................................................................9

**Other Authorities**

David A. Dial, *Reversal of NLRB Policy Regarding No-Solicitation Rules*, 34 Baylor L. Rev. 143 (1982) ..................................................7

# GLOSSARY OF ABBREVIATIONS

| | |
|---|---|
| Act: | National Labor Relations Act (29 U.S.C. §§ 151, et seq.) |
| ALJ: | Administrative law judge |
| ALJD: | Administrative law judge decision |
| ALJX: | Administrative law judge exhibits in Board hearing |
| Board: | National Labor Relations Board |
| Br.: | Opening brief of Starbucks to this Court |
| Board Br.: | Brief of Board to this Court |
| D&O: | The Board's Decision and Order (372 NLRB No. 93) |
| GCX: | General Counsel exhibits in Board hearing |
| RX: | Employer (Starbucks) exhibits in Board hearing |
| Starbucks: | Starbucks Corporation d/b/a Starbucks Coffee Company |
| Tr.: | Transcript of Board hearing |
| Union: | Workers United, affiliated with Service Employees International Union |

## STATEMENT OF THE ISSUES

1.     Whether, in light of the fundamental nature of the right of employees, pursuant to the National Labor Relations Act, to engage in union solicitation and the distribution of union materials to one another in the workplace, the Board properly focused on Starbucks' unlawful directive to an employee to refrain from such solicitation and distribution anywhere on company property at any time, including during paid break periods, rather than on the particular conduct that preceded that directive.

## RELEVANT STATUTORY PROVISIONS

Relevant statutory provisions are contained in the attached Addendum consistent with Circuit Rule 28(a)(5).

## STATEMENT OF THE CASE

This case arises in the context of the employees of a Starbucks store in Seattle, Washington launching a campaign for union representation. Based on conduct by Starbucks' managers that occurred at this store subsequent to the filing of a representation petition with the National Labor Relations Board pursuant to Section 9(c) of the National Labor Relations Act, 29 U.S.C. § 159(c), the Union filed two unfair labor practice charges against Starbucks, which were subsequently prosecuted by the General Counsel for the Board against Starbucks. The charges were heard before an Administrative Law Judge in Seattle, Washington. The Judge found that

1

Starbucks violated the Act on both charges. On June 20, 2023, the Board affirmed. JA362-JA371.

In its Decision and Order, the Board found, first, that Starbucks had violated the Act by unlawfully threatening an employee with discipline if they testified in a representation hearing pursuant to a Board subpoena without having first secured coverage for their shift. The Board also found that Starbucks had unlawfully prohibited an employee from engaging in union solicitation or distribution anywhere on company property, including nonwork areas, on "company time," which was defined as including paid break periods. Starbucks denies but does not ask this Court to vacate the first finding. Starbucks asks this Court to vacate the second finding.

## SUMMARY OF ARGUMENT

The Union adopts and agrees with the Board's findings of fact and argument. Board Br. at 3-40. The Union writes separately to emphasize and place into context the Board's Decision and its importance, specifically with regards to two points.

First, though the contested finding is narrow, the issue that Starbucks challenges is fundamental to the Act. The ability of employees to engage in solicitation and distribution of union materials to one another in the workplace is fundamental to effectuating their federal rights under the Act and has been recognized as such by this Court for decades. It is activity that is squarely protected by Section 7 of the Act. A company's ability to impede on that right is limited.

Starbucks clearly crossed that line in this case when a store manager told a worker that they were not allowed to distribute union pins on Starbucks property any time they were at work—even in nonwork areas, and even when they were on a paid break.

Second, Starbucks' effort to persuade this Court to focus narrowly on where the distribution of pins which occurred prior to the unlawful directive actually happened, in this case over the counter and in the café area, misses the point entirely. At issue in this case is not the conduct of the worker that preceded the issuance of an unlawful work rule, but rather the conduct of Starbucks, whose agent's comments the Board found to have violated the Act. Starbucks' attempt to divert the court's attention away from its managers' actions—the subject of both charges at issue— does not change the basic legal question at issue: how a reasonable employee would have interpreted the managers' comments. As the Board agreed that a reasonable employee would interpret Starbucks' prohibitions as being unlawfully broad, the Board's Decision and Order should be enforced.

## STANDING

Workers United intervened in this case pursuant to Federal Rule of Appellate Procedure 15(d). As a successful charging party before the Board, Workers United was entitled to intervene under *International Union, United Automobile, Aerospace*

*and Agricultural Implement Workers of America, AFL-CIO v. Scofield*, 382 U.S. 205, 208 (1965).

## ARGUMENT

I. **The ability of employees to engage in union solicitation and the distribution of union materials to one another in the workplace is fundamental to the Act.**

The Act's basic premise is that workers have the right to make an uncoerced choice as to whether or not to join a union. Section 7 of the Act grants workers the right to "form, join, or assist labor organizations," or to refrain from doing so, and Section 8 furthers that right by making it an unfair labor practice for an employer to interfere with that that right. 29 U.S.C. §§ 157, 158. Fundamental to each employee's right to make their own decision about unionization is the ability for workers to discuss and distribute information about unions amongst themselves. In order to make their free choice, employees must have access to information about the advantages of unionization and must have the ability to communicate with each other about union activity.  Thus, though "solicitation and distribution" may be a dry phrase, it encapsulates a basic key right that workers are entitled to under the Act.

Since 1943 the Board has recognized, and since 1945 the Supreme Court has affirmed, that employees' ability to engage in distribution of union materials is critical to the Act and thus limited employer's ability to restrict that right. The Supreme Court explained the rule: "in the absence of special circumstances, a

company's rule prohibiting union activity on company property outside of working time constitutes an unreasonable impediment to self-organization." *Republic Aviation Corp. (Babylon, N.Y.)*, 51 NLRB 1186, 1187 (1943), *enforced sub nom. Republic Aviation Corp. v. N.L.R.B.*, 142 F.2d 193 (2d Cir. 1944), *aff'd,* 324 U.S. 793, 65 S. Ct. 982, 89 L. Ed. 1372 (1945), *see also Peyton Packing Co., Inc.*, 49 NLRB 828 (1943), *enforced sub nom. N.L.R.B. v. Peyton Packing Co.*, 142 F.2d 1009 (5th Cir. 1944). In *Republic Aviation*, the Supreme Court affirmed the Board's finding, recognizing that the Board had worked out "an adjustment between the undisputed right of self-organization assured to employees under the Wagner Act and the equally undisputed right of employers to maintain discipline in their establishments." *Republic Aviation*, 324 U.S. at 797-98.

Even after the 1947 enactment of the Taft-Hartley Act, the Supreme Court reiterated that an employer cannot broadly restrict employees' ability to engage in union solicitation in *NLRB v. Babcock & Wilcox Co.,* 351 U.S. 105 (1956), where the Court discussed *Republic Aviation's* holding approvingly and again stated: "No restriction may be placed on the employees' right to discuss self-organization among themselves, unless the employer can demonstrate that a restriction is necessary to maintain production or discipline." *Id.* at 113.

Employers have consistently objected that because employees can engage in solicitation and distribution on their own time outside of work, employees' rights

would not be abridged by limiting the ability to distribute at the workplace. However, this argument has equally consistently failed. The Supreme Court has affirmed what every worker intrinsically knows: that the workplace is the "uniquely appropriate" place to talk to each other and distribute information about the union. In *N.L.R.B. v. Magnavox Co. of Tennessee*, 415 U.S. 322, 325 (1974), the Court explained that "[t]he place of work is a place uniquely appropriate for dissemination of views concerning the bargaining representative and the various options open to the employees." Thus, the Court explained:

> So long as the distribution is by employees to employees and so long as the in-plant solicitation is on nonworking time, banning of that solicitation might seriously dilute [Section] 7 rights. For Congress declared in [Section] 1 of the Act that it was the policy of the United States to protect 'the exercise by workers of full freedom of association, self-organization, and designation of representatives of their own choosing.' (internal citations omitted).

*Magnavox*, 415 U.S. at 325-26. The Board has also recognized the unique importance of workers having the ability to communicate with each other and distribute literature at work about the union. In *Gale Products Div., Outboard Marine Corp.*, 142 NLRB 1246, 1249 (1963), *enforcement denied sub nom. N. L. R. B. v. Gale Products, Div. of Outboard Marine Corp.*, 337 F.2d 390 (7th Cir. 1964), the Board explained that the employees' right to distribute literature regarding unions in the workplace is so important because the workplace is, "the one location where employees are brought together on a daily basis. It is the one place where they

clearly share common interests and where they traditionally seek to persuade fellow workers in matters affecting their union organizational life and other matters related to their status as employees."

Employees talking to each other about unions, passing union materials between each other, comparing information and arguments with each other; that's how organizing happens. Perhaps it also why employers are so keen to try and limit that ability. Indeed, scholars recognize that "one of the most effective strategies used by employers to thwart employees' efforts to unionize has been the promulgation of no-solicitation rules." David A. Dial, *Reversal of NLRB Policy Regarding No-Solicitation Rules*, 34 Baylor L. Rev. 143 (1982). Starbucks' promulgation of a broad no-solicitation rule, through its store manager Pam Mariscal, banning distribution anywhere on Starbucks' property at any time, even on breaks, was unlawful. It failed to allow workers that critical ability to exchange information and materials about the union. Without that ability, Section 7 rights would be illusory.

**II.    The unlawful action at issue here is what Starbucks communicated to its employee, which in this case went far beyond the particular circumstances that may have prompted that communication, and Starbucks did not need to contemporaneously enforce its unlawful rule in order for that communication to properly have been held unlawful.**

Starbucks' brief emphasizes, over and over again, that the distribution of union materials that preceded Mariscal's directive to Rachel Ybarra, the worker who was the recipient of the unlawful communication, occurred in a working area, where

7

customers were, and that this court has declared that restaurants may ban solicitation during nonworking times from customer areas. *See* Br. At 12-13; 13-16; 21-26; 27-28. That is true, but it is besides the point. The finding at issue in the Board's Decision and Order is not based on what actions Ybarra had previously taken, prior to being admonished. Rather, the Board's decision is based on what Mariscal said to Ybarra, and how that statement would be reasonably interpreted. JA362 at fn. 4. The Board found that a reasonable employee would interpret Mariscal's statement as banning union solicitation and distribution anywhere on Starbucks property, including in nonwork areas like break areas, which is unlawful. *Id*.

Starbucks argues that the only reasonable interpretation of Mariscal's statement is limited to prohibiting distribution of materials to customers while on the clock, and that that necessarily limits Mariscal's statements to apply to only customer areas. *See* Br. at 15; 25-26; 32. Putting aside the logical jumps that one would have to take to get there, and whether a reasonable employee who is economically dependent upon the employer would make those jumps, examining Mariscal's testimony about her own statement clearly shows otherwise. The transcript shows this clearly. Out of approximately seven different times that Mariscal explained what she said to Ybarra, only one of them mentioned customers specifically:

"I let them know that they couldn't—couldn't be handing out things to customers that was not, you know, their food or beverage while on work time." Tr. 244:16-18 (JA94).

"I let them know that that is something that they shouldn't be doing while they're you know, on the clock, that they can do that outside of the store, you know, on their free time, like, to—and hand them to friends, family. You know, it was—I just told them, this is not appropriate while you're on the floor and you're working." Tr. 246:23-247:3 (JA96-JA97).

"I pulled Rachel aside and let them know that, hey, this is not something that you should be doing while you're on the clock, you know, again, you can do that outside of work, you know, when you're in your free time, but its' not something that should be happening during the—" Tr. 247:17-22 (JA97).

"When I mentioned it to Rachel, they made the comment that they were on—the second time, they were on a ten-minute break. And I said, that is still considered a company-paid time, so it is not something you should be doing while on the clock." Tr. 249:2-6 (JA99).

"Nothing else was said?" "Other than what I mentioned earlier, you can do this on your off-time outside of Starbucks, you know, to your friends and family, whoever you'd like, you just can't do it while you're on the clock." Tr. 249:10-14 (JA99).

"I felt it was not some—I mean, that was inappropriate to be doing during work time. And so I wanted to get some additional guidance on if that's a conversation that I should be having with Rachel." Tr. 301:21-24 (JA116).

Taking Mariscal's testimony as a whole, it is clear that the Board's Decision rests upon substantial evidence and is thus "conclusive." 29 U.S.C. § 160(e); *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951). Mariscal repeatedly emphasized that she told Ybarra they were not allowed to hand out pins "while at

work," "on the clock," on "company paid-time," "during work time," and explained specifically that that meant on paid breaks as well. Tr. 249:2-6 (JA99).[1] She never clarified that employees were free to pass out pins to each other in nonworking areas of the store, like the back room where Ybarra and Mariscal were having that very conversation. Tr. 245:9-13 (JA95).

In addition, by repeatedly emphasizing that passing out union materials was something that Ybarra could do "outside of the store, on their free time," or "outside of work, when you're on your free time," or "on your off-time outside of Starbucks," the obvious implication was that employees were not allowed to distribute pins anywhere *inside* the store. And that is precisely how Ybarra interpreted Mariscal's statements:

> Q: "And is that how you understood it when she said that to you…?"
> A: … "I understood it to be the content of what she said."
> Q: "Which is?"
> A: "That I could not distribute items while at work on the clock."
> Tr. 156:25-157:8 (JA67-JA68).[2]

Thus, Starbucks' hyper-focus on what Ybarra did, to whom, and where, prior to the unlawful directive being given, is not relevant. The Board's finding was based on what Mariscal said, and who testified about her comments repeatedly and was given ample opportunities to clarify what she told Ybarra. That testimony reveals

---

[1] Ybarra uses they/them pronouns.
[2] The ALJ found Ybarra to be a credible witness. JA312. The Board declined to overturn that finding. JA362 at fn.3.

that Mariscal made it clear to Ybarra that they could only distribute pins outside of Starbucks on their off-time. The clear and obvious implication of that is that employees were not allowed to distribute pins anywhere on Starbucks property, at any time, which is unlawfully overbroad.

Lastly, Starbucks' insistence that its no-solicitation rule as written in its handbook is not unlawfully overbroad and was not alleged to be such misses the mark for similar reasons. Br. at 16; 28-33 . The Board's finding is not based on what was written in Starbucks' handbook, but rather what was being enforced upon Ybarra. JA362; JA362 at fn. 4. And since, in Mariscal's seven different re-tellings of what she said to Ybarra, she did not mention Starbucks' no-solicitation policy even once, a reasonable employee would not have assumed that Mariscal's words would somehow be limited to what was written in the Starbucks handbook.

Importantly, this Court has rejected the contention that a facially unlawful rule, promulgated in the workplace, is only truly unlawful if it is enforced in an unlawful manner, e.g. through worker discipline. In *Food Store Emp. Union, Local 347, Amalgamated Meat Cutters & Butcher Workmen of N. Am., AFL-CIO v. N. L. R. B.*, 418 F.2d 1177 (D.C. Cir. 1969), a union representative visited the store at issue and distributed organizing literature to employees in the store. The employer stopped the union representative from doing so, articulating to the union rep that the company had a rule against distributing literature in the store. The company had

11

signs posted to that effect and had a broad no-solicitation rule in its handbook. Supervisors also communicated to the workers in meetings about the no-solicitation rules. From the hearing record the Court found that the company's supervisors "interpreted the no-solicitation and no-distribution rules to apply to the nonworking areas where the employees ate lunch and took their rest breaks, and to apply to all employees at all times during store working hours irrespective of the actual working times of individual employees." The company argued that since the Board never found its handbook rules to have actually been enforced to discipline employees, that there could be no 8(a)(1) violation. This court explained otherwise:

> However, since there is evidence that the Company made unmistakably apparent its willingness to enforce its rule in an illegal manner, it makes no difference that it may never have had to do so. The rule as so construed, backed by the Company's willingness to enforce it if necessary, is sufficient to support an 8(a)(1) violation because of the substantial risk that the Company in fact deterred employees from engaging in protected activity.

*Food Store Emp. Union*, 418 F.2d at 1180. There, like here, this court focused on the way that the company communicated its rule, not what was written in its handbook, to find an 8(a)(1) violation. And importantly, there, like here, this court focused on the supervisor's communication of the no-solicitation rule to apply to nonworking areas and to rest breaks, not on where prior incidents of solicitation might have actually occurred, to find a violation of Section 8(a)(1).

Thus, Starbucks attempts to draw the court's eye away from Mariscal's unlawful directive and towards Ybarra's preceding conduct does not make the Board's finding any less substantiated. The Board properly focused on what the General Counsel alleged was the unlawful activity: Mariscal's statement to Ybarra. And the Board found that a reasonable employee would have interpreted Mariscal's statements as banning union solicitation and distribution anywhere on Starbucks property, at any time. Because that is unlawfully overbroad and threatens to "seriously dilute" workers' Section 7 rights, it is a violation of Section 8(a)(1) of the Act. *NLRB v. Magnavox*, 415 U.S. at 325.

## CONCLUSION

The Union respectfully requests that the Court deny Starbucks' petition for review and enforce the Board's Order in full.

Dated this 16th day of January, 2024.

BARNARD IGLITZIN & LAVITT LLP

By: s/Dmitri Iglitzin
    Dmitri Iglitzin, WSBA No. 176738
    s/Marina Multhaup
    Marina Multhaup, WSBA No. 52909
    18 W Mercer St, Suite 400
    Seattle, WA 98119
    (206) 257-6003
    (206) 378-4132
    iglitzin@workerlaw.com
    multhaup@workerlaw.com

*Attorneys for Workers United*

13

## CERTIFICATE OF COMPLIANCE

1. This document complies with the word limit of Fed. R. App. P. 32(a)(2) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and Circuit Rule 32(e)(2) :

☒ this document contains 3,115 words, or

☐ this brief uses a monospaced typeface and contains [state the number of] lines of text.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because:

☒ this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14 pt Times New Roman, or

☐ this document has been prepared in a monospaced typeface using [state name and version of word-processing program] with [state number of characters per inch and name of type style].

s/Marina Multhaup
Marina Multhaup, WSBA No. 58877
*Attorney for Workers United*
Dated: November 21, 2023

14

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Final Brief of Intervenor was electronically transmitted to the Court on January 16, 2024, using the Court's ECF filing system, and was served on all counsel via electronic notice pursuant thereto.


s/Marina Multhaup
Marina Multhaup, WSBA No. 58877

15

# ADDENDUM

29 U.S.C. § 157…………………………………………………………A-1

29 U.S.C. § 158…………………………………………………………A-1

29 U.S.C. § 159(c)…………………………………………………………A-8

29 U.S.C. § 160(e)…………………………………………………………A-9

## 29 U.S.C. § 157. Right of employees as to organization, collective bargaining, etc.

Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a)(3) of this title.

## 29 U.S.C. § 158. Unfair labor practices

**(a) Unfair labor practices by employer**

It shall be an unfair labor practice for an employer-

(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;

(2) to dominate or interfere with the formation or administration of any labor organization or contribute financial or other support to it: *Provided*, That subject to rules and regulations made and published by the Board pursuant to section 156 of this title, an employer shall not be prohibited from permitting employees to confer with him during working hours without loss of time or pay;

(3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization: *Provided*, That nothing in this subchapter, or in any other statute of the United States, shall preclude an employer from making an agreement with a labor organization (not established, maintained, or assisted by any action defined in this subsection as an unfair labor practice) to require as a condition of employment membership therein on or after the thirtieth day following the

beginning of such employment or the effective date of such agreement, whichever is the later, (i) if such labor organization is the representative of the employees as provided in section 159(a) of this title, in the appropriate collective-bargaining unit covered by such agreement when made, and (ii) unless following an election held as provided in section 159(e) of this title within one year preceding the effective date of such agreement, the Board shall have certified that at least a majority of the employees eligible to vote in such election have voted to rescind the authority of such labor organization to make such an agreement: *Provided further*, That no employer shall justify any discrimination against an employee for nonmembership in a labor organization (A) if he has reasonable grounds for believing that such membership was not available to the employee on the same terms and conditions generally applicable to other members, or (B) if he has reasonable grounds for believing that membership was denied or terminated for reasons other than the failure of the employee to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membership;

(4) to discharge or otherwise discriminate against an employee because he has filed charges or given testimony under this subchapter;

(5) to refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 159(a) of this title.

**(b) Unfair labor practices by labor organization**

It shall be an unfair labor practice for a labor organization or its agents-

(1) to restrain or coerce (A) employees in the exercise of the rights guaranteed in section 157 of this title: *Provided*, That this paragraph shall not impair the right of a labor organization to prescribe its own rules with respect to the acquisition or retention of membership therein; or (B) an employer in the selection of his representatives for the purposes of collective bargaining or the adjustment of grievances;

(2) to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a)(3) or to discriminate against an employee with respect to whom membership in such organization has been denied or terminated on some ground other than his failure to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membership;

(3) to refuse to bargain collectively with an employer, provided it is the representative of his employees subject to the provisions of section 159(a) of this title;

(4)(i) to engage in, or to induce or encourage any individual employed by any person engaged in commerce or in an industry affecting commerce to engage in,

A-2

a strike or a refusal in the course of his employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services; or (ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is-

(A) forcing or requiring any employer or self-employed person to join any labor or employer organization or to enter into any agreement which is prohibited by subsection (e);

(B) forcing or requiring any person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person, or forcing or requiring any other employer to recognize or bargain with a labor organization as the representative of his employees unless such labor organization has been certified as the representative of such employees under the provisions of section 159 of this title: *Provided*, That nothing contained in this clause (B) shall be construed to make unlawful, where not otherwise unlawful, any primary strike or primary picketing;

(C) forcing or requiring any employer to recognize or bargain with a particular labor organization as the representative of his employees if another labor organization has been certified as the representative of such employees under the provisions of section 159 of this title;

(D) forcing or requiring any employer to assign particular work to employees in a particular labor organization or in a particular trade, craft, or class rather than to employees in another labor organization or in another trade, craft, or class, unless such employer is failing to conform to an order or certification of the Board determining the bargaining representative for employees performing such work:

*Provided*, That nothing contained in this subsection shall be construed to make unlawful a refusal by any person to enter upon the premises of any employer (other than his own employer), if the employees of such employer are engaged in a strike ratified or approved by a representative of such employees whom such employer is required to recognize under this subchapter: *Provided further*, That for the purposes of this paragraph (4) only, nothing contained in such paragraph shall be construed to prohibit publicity, other than picketing, for the purpose of truthfully advising the public, including consumers and members of a labor organization, that a product or products are produced by an employer with whom the labor organization has a primary dispute and are distributed by another employer, as long as such publicity does not have an effect of inducing any individual employed by any person other than the primary employer in the course of his employment to

refuse to pick up, deliver, or transport any goods, or not to perform any services, at the establishment of the employer engaged in such distribution;

(5) to require of employees covered by an agreement authorized under subsection (a)(3) the payment, as a condition precedent to becoming a member of such organization, of a fee in an amount which the Board finds excessive or discriminatory under all the circumstances. In making such a finding, the Board shall consider, among other relevant factors, the practices and customs of labor organizations in the particular industry, and the wages currently paid to the employees affected;

(6) to cause or attempt to cause an employer to pay or deliver or agree to pay or deliver any money or other thing of value, in the nature of an exaction, for services which are not performed or not to be performed; and

(7) to picket or cause to be picketed, or threaten to picket or cause to be picketed, any employer where an object thereof is forcing or requiring an employer to recognize or bargain with a labor organization as the representative of his employees, or forcing or requiring the employees of an employer to accept or select such labor organization as their collective bargaining representative, unless such labor organization is currently certified as the representative of such employees:

(A) where the employer has lawfully recognized in accordance with this subchapter any other labor organization and a question concerning representation may not appropriately be raised under section 159(c) of this title,

(B) where within the preceding twelve months a valid election under section 159(c) of this title has been conducted, or

(C) where such picketing has been conducted without a petition under section 159(c) of this title being filed within a reasonable period of time not to exceed thirty days from the commencement of such picketing: *Provided*, That when such a petition has been filed the Board shall forthwith, without regard to the provisions of section 159(c)(1) of this title or the absence of a showing of a substantial interest on the part of the labor organization, direct an election in such unit as the Board finds to be appropriate and shall certify the results thereof: *Provided further*, That nothing in this subparagraph (C) shall be construed to prohibit any picketing or other publicity for the purpose of truthfully advising the public (including consumers) that an employer does not employ members of, or have a contract with, a labor organization, unless an effect of such picketing is to induce any individual employed by any other person in the course of his employment, not to pick up, deliver or transport any goods or not to perform any services.

Nothing in this paragraph (7) shall be construed to permit any act which would otherwise be an unfair labor practice under this subsection.

**(c) Expression of views without threat of reprisal or force or promise of benefit**

The expressing of any views, argument, or opinion, or the dissemination thereof, whether in written, printed, graphic, or visual form, shall not constitute or be evidence of an unfair labor practice under any of the provisions of this subchapter, if such expression contains no threat of reprisal or force or promise of benefit.

**(d) Obligation to bargain collectively**

For the purposes of this section, to bargain collectively is the performance of the mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment, or the negotiation of an agreement, or any question arising thereunder, and the execution of a written contract incorporating any agreement reached if requested by either party, but such obligation does not compel either party to agree to a proposal or require the making of a concession: *Provided*, That where there is in effect a collective-bargaining contract covering employees in an industry affecting commerce, the duty to bargain collectively shall also mean that no party to such contract shall terminate or modify such contract, unless the party desiring such termination or modification-

(1) serves a written notice upon the other party to the contract of the proposed termination or modification sixty days prior to the expiration date thereof, or in the event such contract contains no expiration date, sixty days prior to the time it is proposed to make such termination or modification;

(2) offers to meet and confer with the other party for the purpose of negotiating a new contract or a contract containing the proposed modifications;

(3) notifies the Federal Mediation and Conciliation Service within thirty days after such notice of the existence of a dispute, and simultaneously therewith notifies any State or Territorial agency established to mediate and conciliate disputes within the State or Territory where the dispute occurred, provided no agreement has been reached by that time; and

(4) continues in full force and effect, without resorting to strike or lock-out, all the terms and conditions of the existing contract for a period of sixty days after such notice is given or until the expiration date of such contract, whichever occurs later:

The duties imposed upon employers, employees, and labor organizations by paragraphs (2) to (4) of this subsection shall become inapplicable upon an intervening certification of the Board, under which the labor organization or individual, which is a party to the contract, has been superseded as or ceased to be the representative of the employees subject to the provisions of section 159(a) of this title, and the duties so imposed shall not be construed as requiring either party to discuss or agree to any modification of the terms and conditions contained in a contract for a fixed period, if such modification is to become effective before such terms and conditions can be reopened under the provisions of the contract. Any employee who engages in a strike within any notice period specified in this subsection, or who engages in any strike within the appropriate period specified in subsection (g) of this section, shall lose his status as an employee of the employer engaged in the particular labor dispute, for the purposes of sections 158, 159, and 160 of this title, but such loss of status for such employee shall terminate if and when he is reemployed by such employer. Whenever the collective bargaining involves employees of a health care institution, the provisions of this subsection shall be modified as follows:

(A) The notice of paragraph (1) of this subsection shall be ninety days; the notice of paragraph (3) of this subsection shall be sixty days; and the contract period of paragraph (4) of this subsection shall be ninety days.

(B) Where the bargaining is for an initial agreement following certification or recognition, at least thirty days' notice of the existence of a dispute shall be given by the labor organization to the agencies set forth in paragraph (3) of this subsection.

(C) After notice is given to the Federal Mediation and Conciliation Service under either clause (A) or (B) of this sentence, the Service shall promptly communicate with the parties and use its best efforts, by mediation and conciliation, to bring them to agreement. The parties shall participate fully and promptly in such meetings as may be undertaken by the Service for the purpose of aiding in a settlement of the dispute.

## (e) Enforceability of contract or agreement to boycott any other employer; exception

It shall be an unfair labor practice for any labor organization and any employer to enter into any contract or agreement, express or implied, whereby such employer ceases or refrains or agrees to cease or refrain from handling, using, selling, transporting or otherwise dealing in any of the products of any other employer, or to cease doing business with any other person, and any contract or agreement entered into heretofore or hereafter containing such an agreement shall be to such extent unenforcible [1] and void: *Provided*, That nothing in this subsection

shall apply to an agreement between a labor organization and an employer in the construction industry relating to the contracting or subcontracting of work to be done at the site of the construction, alteration, painting, or repair of a building, structure, or other work: *Provided further*, That for the purposes of this subsection and subsection (b)(4)(B) the terms "any employer", "any person engaged in commerce or an industry affecting commerce", and "any person" when used in relation to the terms "any other producer, processor, or manufacturer", "any other employer", or "any other person" shall not include persons in the relation of a jobber, manufacturer, contractor, or subcontractor working on the goods or premises of the jobber or manufacturer or performing parts of an integrated process of production in the apparel and clothing industry: *Provided further*, That nothing in this subchapter shall prohibit the enforcement of any agreement which is within the foregoing exception.

**(f) Agreement covering employees in the building and construction industry**

It shall not be an unfair labor practice under subsections (a) and (b) of this section for an employer engaged primarily in the building and construction industry to make an agreement covering employees engaged (or who, upon their employment, will be engaged) in the building and construction industry with a labor organization of which building and construction employees are members (not established, maintained, or assisted by any action defined in subsection (a) as an unfair labor practice) because (1) the majority status of such labor organization has not been established under the provisions of section 159 of this title prior to the making of such agreement, or (2) such agreement requires as a condition of employment, membership in such labor organization after the seventh day following the beginning of such employment or the effective date of the agreement, whichever is later, or (3) such agreement requires the employer to notify such labor organization of opportunities for employment with such employer, or gives such labor organization an opportunity to refer qualified applicants for such employment, or (4) such agreement specifies minimum training or experience qualifications for employment or provides for priority in opportunities for employment based upon length of service with such employer, in the industry or in the particular geographical area: *Provided*, That nothing in this subsection shall set aside the final proviso to subsection (a)(3): *Provided further*, That any agreement which would be invalid, but for clause (1) of this subsection, shall not be a bar to a petition filed pursuant to section 159(c) or 159(e) of this title.

**(g) Notification of intention to strike or picket at any health care institution**

A labor organization before engaging in any strike, picketing, or other concerted refusal to work at any health care institution shall, not less than ten days prior to such action, notify the institution in writing and the Federal Mediation and

Conciliation Service of that intention, except that in the case of bargaining for an initial agreement following certification or recognition the notice required by this subsection shall not be given until the expiration of the period specified in clause (B) of the last sentence of subsection (d). The notice shall state the date and time that such action will commence. The notice, once given, may be extended by the written agreement of both parties.

### **29 U.S.C. § 159(c)**: Representatives and elections

**(c) Hearings on questions affecting commerce; rules and regulations**

(1) Whenever a petition shall have been filed, in accordance with such regulations as may be prescribed by the Board-

(A) by an employee or group of employees or any individual or labor organization acting in their behalf alleging that a substantial number of employees (i) wish to be represented for collective bargaining and that their employer declines to recognize their representative as the representative defined in subsection (a), or (ii) assert that the individual or labor organization, which has been certified or is being currently recognized by their employer as the bargaining representative, is no longer a representative as defined in subsection (a); or

(B) by an employer, alleging that one or more individuals or labor organizations have presented to him a claim to be recognized as the representative defined in subsection (a);

the Board shall investigate such petition and if it has reasonable cause to believe that a question of representation affecting commerce exists shall provide for an appropriate hearing upon due notice. Such hearing may be conducted by an officer or employee of the regional office, who shall not make any recommendations with respect thereto. If the Board finds upon the record of such hearing that such a question of representation exists, it shall direct an election by secret ballot and shall certify the results thereof.

(2) In determining whether or not a question of representation affecting commerce exists, the same regulations and rules of decision shall apply irrespective of the identity of the persons filing the petition or the kind of relief sought and in no case shall the Board deny a labor organization a place on the ballot by reason of an order with respect to such labor organization or its predecessor not issued in conformity with section 160(c) of this title.

(3) No election shall be directed in any bargaining unit or any subdivision within which in the preceding twelve-month period, a valid election shall have been held. Employees engaged in an economic strike who are not entitled to reinstatement

A-8

shall be eligible to vote under such regulations as the Board shall find are consistent with the purposes and provisions of this subchapter in any election conducted within twelve months after the commencement of the strike. In any election where none of the choices on the ballot receives a majority, a run-off shall be conducted, the ballot providing for a selection between the two choices receiving the largest and second largest number of valid votes cast in the election.

   (4) Nothing in this section shall be construed to prohibit the waiving of hearings by stipulation for the purpose of a consent election in conformity with regulations and rules of decision of the Board.

   (5) In determining whether a unit is appropriate for the purposes specified in subsection (b) the extent to which the employees have organized shall not be controlling.


**29 U.S.C. § 160(e)**. **Petition To Court For Enforcement Of Order;**
**Proceedings; Review Of Judgment**

The Board shall have power to petition any court of appeals of the United States, or if all the courts of appeals to which application may be made are in vacation, any district court of the United States, within any circuit or district, respectively, wherein the unfair labor practice in question occurred or wherein such person resides or transacts business, for the enforcement of such order and for appropriate temporary relief or restraining order, and shall file in the court the record in the proceedings, as provided in section 2112 of title 28. Upon the filing of such petition, the court shall cause notice thereof to be served upon such person, and thereupon shall have jurisdiction of the proceeding and of the question determined therein, and shall have power to grant such temporary relief or restraining order as it deems just and proper, and to make and enter a decree enforcing, modifying and enforcing as so modified, or setting aside in whole or in part the order of the Board. No objection that has not been urged before the Board, its member, agent, or agency, shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances. The findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall be conclusive. If either party shall apply to the court for leave to adduce additional evidence and shall show to the satisfaction of the court that such additional evidence is material and that there were reasonable grounds for the failure to adduce such evidence in the hearing before the Board, its member, agent, or agency, the court may order such additional evidence to be taken before the Board, its member, agent, or agency, and to be made a part of the record. The Board may modify its findings as to the facts, or make new findings by reason of additional

A-9

evidence so taken and filed, and it shall file such modified or new findings, which findings with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall be conclusive, and shall file its recommendations, if any, for the modification or setting aside of its original order. Upon the filing of the record with it the jurisdiction of the court shall be exclusive and its judgment and decree shall be final, except that the same shall be subject to review by the appropriate United States court of appeals if application was made to the district court as hereinabove provided, and by the Supreme Court of the United States upon writ of certiorari or certification as provided in section 1254 of title 28.

A-10